Tucker, P.
I am of opinion, that a certiorari ought not to be awarded upon the matter suggested ; because, in the fii'st place, I do not think that the pleas of set-off which were tendered by the defendant, and rejected by the court, are a part of the record; and 2dly, if they were, yet as the defendant acquiesced in the rejection of them, and took no exception, he cannot now bring that matter in question before this court.
1. The pleas are not a part of the record. The record, we are told, is made up of “ the writ (for the purpose of amending by, if necessary); the whole pleadings between the parties; papers of which profert is made or oyer demanded, and such as have been specially submitted to the consideration of the court by a bill of exceptions, a demurrer to evidence, or a special verdict, or are inseparably connected with some paper or evidence so referred to. These, with the several proceedings at the rules, or in court, until the rendition of the judgment, constitute the record in common law suits, and are to be noticed by the court, and no others.” Mandeville v. Perry, 6 Call 78. 83. Now, the pleas which were tendered in this case, come within no part of this description. They constitute no part of the pleadings between the parties. The defendant desired to make them so, but the court, for good reasons doubtless, refused to permit them to be filed. They were of course not filed. Though placed among the papers by the party or the clerk, they were not filed, and were of course no part of the record. What function could *352 they perform ? None. If it was designed to assign the rejection of them as error, the defendant should have filed his exceptions, and thus have identified the papers offered, and have made them part of the record, and afforded the court an opportunity of assigning the reasons of the rejection. He has not done this; he has not even had them so spread upon the record as to identify them. The certificate of the clerk cannot supply the defect; Cunningham, v. Mitchell, 4 Rand. 189. Bowyer v. Chesnut, 4 Leigh 1. Indeed, they are not to be presumed to be among the papers, as they were rejected, and no exceptions were filed. The defendant not excepting, is taken to acquiesce; and as the court refuses him leave to file his plea, he may put it into his pocket. If he did so, could he be prosecuted for purloining a record? I apprehend not; for when his motion to file a plea is refused, the plea is still in his possession and control, and will so continue, unless he elects to compel the court to make it a part of the record, which he may do by bill of exceptions. This seems to me the true view of the matter. If the plea is received, it becomes part of the record at once, by the voluntary act of the court. If the court refuses it a place among the records, which is the effect of the rejection, the defendant may then require it to be made a part of the record by bill of exceptions; or the court may by its order identify the paper, and set forth upon the order book the reasons of its refusal to receive it.
This brings me to remark, 2. that even if the pleas had been spread upon the record, and constituted a part of it, this court must take it that they were properly rejected, as the defendant did not except. His acquiescence in the rejection must be presumed; and as it is possible there may have been good reason for the rejection, that reason must be taken to have existed, as he did not call upon the court to sign a bill of exceptions, in which its reasons would have been stated. A *353 contrary practico would lead to absurdity and mischief. If a continuance is refused, or a motion for a new trial overruled, the court must load the record with its reasons, though the party does not except. This would be contrary to reason, and is at war with well established principles and practice. The rejection, then, in this case, must be taken to be right; and if so, for what purpose have the pleas inserted in the record? I see no use of them, which would avail the defendant, and I therefore do not think the cause should be delayed for that which (if a part of the record at all) is an unimportant part of it, in relation to the questions before this court.
It may also be remarked, that if a bill of exceptions had been filed in the present case, and had merely stated the fact of the rejection of the pleas, without shewing any reason for the delay in not offering them sooner, this court, under the authority of the case of Martin v. Anderson, 6 Rand. 19. must have affirmed the judgment rejecting the plea.
The other judges concurred. Certiorari denied.
The cause was then argued on its merits, by Johnson for the appellant, and Stanard for the appellee.
Tucker, P. This is an action of covenant upon a contract between a salt manufacturer and a carrier, for the carriage of a quantity of salt. By the contract, Toncray agreed to transport for White, from 1200 to 5000 barrels of salt, annually, for three years. The carrier contends, that, by this provision, he was entitled to demand that the manufacturer should deliver to him, or have ready for delivery, each year, the full quantity of 5000 barrels, or such quantity between 1200 and 5000 as he might elect. The defendant White denies Toncray's right of election, and on the trial of the cause, *354 moved the court to instruct the jury, that Tie, and not the plaintiff, had the right of election. The court refused the instruction, and, in effect, gave the opinion to the jury, that the plaintiff had the right of election.
It is sufficiently obvious, as was said at the bar, that the right of election cannot exist in both parties, since the exercise of the right would, in that ease, be conflicting. It is also clear, that as a broad latitude is allowed as to quantity, there must be in one or other of the parties the right to fix the quantity to be delivered for transportation. To which of the parties did that right belong ? I answer, to the manufacturer.
This will be abundantly clear, whether we proceed upon technical principles, or upon the reason and nature of the contract. According to well established principles, the words here, being the words of the carrier, are to be taken most strongly against him. And W’hat, then, is their meaning? He agrees to transport from 1200 to 5000 barrels: the quantum is not fixed : but it must be fixed. To allow him to fix it, would be to take the words most strongly in his favour. He cannot, therefore, have the privilege; and as one or the other must have it, the defendant must have it. Indeed, I consider the agreement to transport for White from 1200 to 5000 barrels, as being equivalent to an agreement to.transport any quantity between 1200 and 5000; not any quantity the plaintiff or covenantor wight name, but any quantity that the other party might name. For, if the carrier could name the quantity, the contract would in fact not bind him farther than the 1200 barrels ; for he cannot be said to be bound, who has an election to do or not to do-the act. So that though he expressly binds himself to transport any quantity within the named limits, he could absolve himself therefrom by electing to transport a single bushel more than 1200 barrels. This would be a total perversion of the rule, of law.
*355 I am persuaded, however, that this matter is rather to be decided upon a just attention to the objects and design of the parties, than upon any technical rule whatsoever. It may be difficult to evolve the true principle which should govern such cases : but I will venture the suggestion, that, in general, where a latitude is given in contracts of this description, the right to fix the quantum must depend upon the question,—what is the principal motive to the contract ? and he whose concern constitutes that motive, must have the election in preference to the other party. Thus in a contract for the transportation to market, of salt, or wheat, or flour, or coal,'or other merchandise, the primary and moving consideration of the contract, is the getting the article to'the place of sale. The carriage is secondary and dependant. The manufacturers have no idea of doing more than send- their own articles. It does not enter into their conception, that they are to look about them, and, if their own stock falls short, to make up the deficiency aliunde. An engagement of this character is not made with a view of compelling the manufacturer to furnish employment for a certain number of wagons or boats, but, on the other hand, to bind the carrier to furnish adequate transportation for a quantity, more or less, of produce that is going to market. Who would ever think of binding himself to employ carriers, when he had nothing to transport ? or more carriage than would be necessary for his transportation ? No one. Hence it is, that in such contracts,, a certain amount is first fixed, and then a latitude is given beyond it to some definite limit. This latitude, in the nature of the thing, is inserted for the benefit of him who has the articles for transportation. How absurd would it be to give to the carrier the power of compelling the employer to pay for more carriage when he had nothing more to carry! The same principles prevail in other cases. If a brick-maker engages with a builder, to burn for him from *356 500,000 to 800,000 bricks, it is obvious, that the latitude is given because the builder may want more than 500,000, and perhaps not so many as 800,000. His wants constitute the true gauge, and he is the person to judge of them. So, if a man offers to build from five to ten houses for another, the employer must of necessity have a control over the number to be built, since it cannot be supposed that he builds merely to furnish employment to workmen. He builds to meet his own wants, and they are the measure of extent to which he is willing to be bound. With the workman it is otherwise, as he can usually expand or contract his operations with comparative facility.
I do not think it necessary to say any thing on the other points presented by the bills of exceptions. I am of opinion, that the judgment should be reversed, and the cause sent back for a new trial, at which the first instruction asked by the defendant and stated in his fourth bill of exceptions, should be given by the court to the jury, if again required.
The other judges concurred. Judgment i-eversed, and cause sent back for a new trial.,